UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JODI L. HASS,

                    Plaintiff,

    -v-                                    5:14-CV-0730
                                          (DNH)

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                             OF COUNSEL:

MEGGESTO, CROSSETT LAW FIRM        KIMBERLY A. SLIMBAUGH, ESQ.
Attorney for the Plaintiff
313 E. Willow Street, Suite 201
Syracuse, New York 13203

SOCIAL SECURITY ADMINISTRATION     ROBERT R. SCHRIVER, ESQ.
Attorney for the Defendant                      CATHLEEN B. CLARK, ESQ.
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

      On June 23, 2011, plaintiff Jodi Hass filed an application for disability insurance benefits alleging that various physical and mental health problems had rendered her disabled beginning on June 15, 2008. Plaintiff's claim was initially denied on September 21, 2011. At plaintiff's

request, a hearing was held before Administrative Law Judge Yvette N. Diamond ("ALJ") on January 20, 2013. Plaintiff appeared and testified at the hearing.

On February 14, 2013, the ALJ issued a written decision denying Hass's application for benefits, which became the final decision of defendant Commissioner of Social Security when the Appeals Council denied plaintiff's request for review. Plaintiff now brings this appeal from the Commissioner's final decision. The parties have filed their briefs as well as the Administrative Record.

## II. **STANDARD OF REVIEW**

The Social Security Administration has promulgated regulations establishing a five step sequential evaluation process to determine disability. See 20 C.F.R. § 416.920(a)(4). Under that evaluation process, the decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014). See also 20 C.F.R. § 404.1520. "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." Barnhart v. Thomas, 540 U.S. 20, 24 (2003).

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial

evidence in the record to support the decision.  See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  See Roat v. Barnhart, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).

### III. DISCUSSION

*(i) ALJ's Findings.*

In the present case, the ALJ determined that plaintiff's carpal tunnel syndrome, depressive disorder, posttraumatic stress disorder and panic disorder with agoraphobia were severe impairments pursuant to Step 2, but that none meet or equal the criteria of an impairment in the Listing of Impairments.  After consideration of the limitations of all of plaintiff's impairments, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform light work except that she can lift and carry up to twenty pounds occasionally and ten pounds frequently; stand or walk for six out of eight hours; and sit for six out of eight hours.  The ALJ imposed certain limitations on plaintiff's residual functional capacity based upon her specific impairments, including that she was limited to frequent reach, handle and finger tasks and to low stress work.  With the help of a vocational expert, the ALJ then determined that plaintiff was capable of performing her past relevant work as an inspector of circuit boards and thus, was not disabled pursuant to the Social Security Act.

Hass argues that the ALJ erred by: (i) failing to properly evaluate the opinion of her treating therapist, (iii) failing to provide evidentiary support for the conclusion that plaintiff is able

to "frequently reach, handle and finger", (iii) rejecting plaintiff's testimony regarding the disabling effects of her impairments, (ii) failing to include all the limitations or explain the reasons for not including the limitations identified by her psychological consultative evaluation in the residual functional capacity determination.

*(ii) Opinion of Plaintiff's Treating Therapist.*

Hass contends that the ALJ erred by failing to properly evaluate and give weight to the opinion of David Blair, plaintiff's licensed clinical social worker. Mr. Blair saw plaintiff every two weeks for more than a year and completed an assessment form on her behalf indicating that her mental impairments seriously limited numerous work related abilities, including completing a normal workday, handling work stress and accepting instructions and criticism from supervisors.

Pursuant to the Commissioner's regulations, an opinion from a treating "acceptable medical source" can be given controlling weight. See 20 C.F.R. § 416.913(a). However, Blair is not an "acceptable medical source" but instead is considered an "other medical source", therefore his opinion is not entitled to controlling weight. Id. The Commissioner "may" use evidence from other medical sources. Under Social Security Ruling ("SSR") 06–03p, an ALJ "generally should explain the weight given to opinions from" other medical sources who have a treating relationship with a claimant. "Courts have held, however, that an ALJ is not required to weigh the assessment of an 'other medical source' at all." See Ross v. Colvin, 2014 WL 5410327, at *6 (N.D.N.Y. Oct. 21, 2014) (D.J. Mordue) (citing Bulavinetz v. Astrue, 663 F. Supp. 2d 208, 212 (W.D.N.Y. 2009); Esteves v. Barnhart, 492 F. Supp. 2d 275, 281–82 (W.D.N.Y. 2007)).

In the present case, while the ALJ did not give significant weight to the opinion of Mr. Blair, she did discuss it at length and explain her reasons for discounting its conclusions. First, the ALJ

noted that Blair's assessment was contradicted by the opinion of Dr. Caldwell, the consultative examiner. Dr. Caldwell's report indicated that plaintiff had markedly better work related abilities, including that plaintiff could understand and follow simple directions and instructions and perform simple tasks independently. The ALJ also found that Blair's assessment of plaintiff's impairments was not supported by either the medical evidence of record or by plaintiff's own statements about her daily life. This evidence undermined the highly restrictive limitations specified by Blair in his assessment. As a result, the ALJ properly considered and weighed the opinion of Mr. Blair.

*(iii) Limitations Imposed by Plaintiff's Carpal Tunnel Syndrome.*

Next, Hass contends that the ALJ's finding that she has the ability to "frequently reach, finger and handle" is not supported in the administrative record.

The ALJ determined that Hass's carpal-tunnel syndrome was a severe impairment pursuant to the Social Security regulations. In her RFC determination, the ALJ discussed the fact that plaintiff has undergone both carpal tunnel release surgeries of her right and left wrist and multiple trigger release surgeries of the fingers. See ALJ Decision, ECF No. 11-3 at 13. Further, the ALJ noted that in March 2009, plaintiff's orthopedist, Walter Short, M.D., found plaintiff had full range of motion of her wrist and fingers and a normal motor examination. After plaintiff underwent trigger surgeries to her fingers in July 2009 and December 2009, Dr. Short noted that plaintiff recovered quickly, was not experiencing triggering and had full range of motion and normal sensation in all fingers. As a result, the ALJ concluded that plaintiff's symptoms had not persisted following her surgeries and only limited her residual functional capacity to frequent reaching, handling and fingering. "Frequent" refers to the ability to perform an activity only during one-half to two-thirds of a regular workday. See SSR 83-10.

Contrary to plaintiff's contention, there is substantial evidence in the administrative record

to support the ALJ's determination concerning the limitations imposed by plaintiff's carpal tunnel syndrome. Both the medical evidence and the treatment notes of plaintiff's treating physician support the ALJ's finding the plaintiff's residual functional capacity was limited to frequent reaching, handling and fingering.

To further support her claim, Hass points to a Functional Capacity Evaluation performed by physical therapist Kennett Carter, which recommended that she avoid "all repetitive motion and fine motor activities". However, the ALJ addressed Mr. Carter's evaluation is her decision. The ALJ found that Mr. Carter's recommendation was based on a single meeting and was inconsistent with both the medical evidence, including treatment notes from Dr. Short and plaintiff's daily activities, which demonstrated greater functioning. As a result, the ALJ properly considered the opinion of Mr. Carter and found it inconsistent with the medical evidence submitted by Dr. Short.

*(iv) Determination Concerning Plaintiff's Subjective Symptoms.*

Hass states that the ALJ incorrectly considered plaintiff's subjective symptoms in determining her residual functional capacity. To support her position, plaintiff alleges that the ALJ applied the improper legal standard by assessing the plaintiff's credibility after making an RFC determination. Further, plaintiff argues that the ALJ improperly mischaracterized plaintiff's testimony concerning her daily activities to discount her subjective symptoms.

"It is the function of the [Commissioner], not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir. 1984). In making a credibility determination, the hearing officer is required to take the claimant's reports of pain and other limitations into account. See 20 C.F.R. § 404.1529(a). The ALJ is required to consider all of the

evidence of record in making his or her credibility assessment. See 20 C.F.R. §§ 404.1529, 404.1545(a)(3). First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) ... that could reasonably be expected to produce the claimant's pain or other symptoms." See SSR 96–7p. Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010); see also Poupore v. Astrue, 566 F.3d 303, 307 (2d Cir. 2009).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve pain or symptoms; (5) other treatment received to relieve pain or symptoms; (6) any measures taken by the claimant to relieve pain or symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to pain or symptoms. See 20 C.F.R. §§ 404.1529(c)(3)(i)(vii); 416.929(c)(3)(i)-(vii). "An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999). "Even where the administrative record may also adequately support contrary findings on particular issues, the

ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." Genier, 606 F.3d at 49 (citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir.1982)).

Here, the ALJ found that the Hass's medically determinable impairments could reasonably be expected to cause the alleged symptoms complained of by plaintiff but found that the plaintiff's testimony concerning the intensity, persistence and limiting effects of such symptoms were not credible and inconsistent with the objective medical evidence and the plaintiff's own self reporting. The ALJ then detailed the objective medical evidence concerning both plaintiff's hand and arm pain and psychiatrically based symptoms, including the findings of Dr. Short, Dr. Blackwell and Dr. Caldwell and the ways in which such objective medical evidence was inconsistent with plaintiff's subjective testimony concerning her symptoms. Further, pursuant to 20 C.F.R. § 404.1529, the ALJ reviewed plaintiff's daily activities, her treatment history, medications she was taking and other factors concerning plaintiff's functional limitations and restrictions due to her pain or symptoms. The ALJ also noted certain inconsistencies in plaintiff's testimony which negatively impacted her credibility.

Reviewing the record as a whole, there is substantial evidence to support the ALJ's residual functional capacity determination and upon which to reject plaintiff's subjective complaints as inconsistent with the objective medical evidence and the plaintiff's daily activities.

In her brief, plaintiff argues that the ALJ applied an improper legal standard in concluding "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the objective medical evidence of record, the claimant's own self reporting, and the above Residual Functional Capacity Assessment". See ALJ Decision, ECF No. 11-3 at 15.

While this language appears to suggest that the residual functional capacity determination was made before even considering a claimant's subjective testimony, other courts have determined that such language is boilerplate and instead look to the actual substance of the ALJ's residual functional capacity determination. See Crofoot v. Comm'r of Soc. Sec., 2013 WL 5493550 at *11 (N.D.N.Y. Sept. 30, 2013) (Sharpe, C.J.); Lewis v. Colvin, 2015 WL 4993681, at *7 (N.D.N.Y. Aug. 21, 2015); Marchetti v. Colvin, 2014 WL 7359158, at *17 (E.D.N.Y. Dec. 24, 2014); Abdulsalam v. Comm'r of Soc. Sec., 2014 WL 420465, at *7-8 (N.D.N.Y. Feb. 4, 2014) (D.J. D'Agostino). "[R]eviewing courts do not demand perfect decisions, and '[w]hile this sort of boilerplate is inadequate, by itself, to support a credibility finding, ... its use does not make a credibility determination invalid." Crofoot, 2013 WL 5493550 at *11. Rather, "[t]he determinative question is not whether [the] ALJ used meaningless and opaque language when expressing his credibility choice, but whether he explained how [the plaintiff's] subjective testimony is not supported or undermined by other evidence, and whether the ultimate credibility finding is supported by substantial evidence." Id. As discussed above, here the ALJ detailed specific reasons supporting her determination of the plaintiff's credibility and such reasons were supported by substantial evidence.

Lastly, Hass argues that the ALJ mischaracterized the nature of plaintiff's daily activities and that her testimony was not indicative of any ability to perform substantial gainful activity. A review of the administrative record, including the transcript of the ALJ hearing, however shows this claim to be without merit. As discussed by the ALJ, plaintiff testified that she cleaned her home, gardened, mowed her lawn, shopped for groceries, cooked and socialized. See ALJ Hearing Transcript, ECF No. 11-2, at 28-33. While plaintiff indicated she was unable to perform certain household repairs, she did not indicate that it was her impairments that prevented her

from doing so. Id. at 30. Plaintiff argues that the ALJ mischaracterized the fact that plaintiff likes to fish, but plaintiff's testimony indicates that her recent absence from fishing was a result of a lack of transportation, not a result of her impairments. The ALJ is not required to address every single item of testimony when determining plaintiff's credibility. See Durakovic v. Colvin, 2014 WL 1293427, at *8 (N.D.N.Y. March 31, 2014) (D.J. Scullin). Here, on whole, the ALJ's determination with regards to plaintiff's credibility and her residual functional capacity was supported by substantial evidence.

*(v) Opinion of Consultative Examiner.*

Hass also argues that while the ALJ accepted the consultative examiner's opinion, the ALJ failed to explain why she rejected the consultative examiner's opinions which were consistent with the plaintiff's allegations concerning her impairments. Plaintiff contends that portions of Dr. Caldwell's findings support plaintiff's testimony concerning her subjective symptoms, including that she suffered from panic attacks two times per week and had an inability to sleep, and that the ALJ did not expressly mention or consider such consistency when analyzing plaintiff's credibility.

The ALJ gave great weight to Dr. Caldwell's opinion as it was based on an in person examination and supported by the medical evidence in the record. While Dr. Caldwell diagnosed plaintiff with depressive disorder, posttraumatic stress disorder and panic disorder and opined that plaintiff was limited in her ability to appropriately deal with stress, many of his findings were inconsistent with plaintiff's subjective symptoms, including that plaintiff could follow and understand simple directions, perform simple and complex tasks independently, maintain attention and concentration and make appropriate decisions. More importantly, the conclusions contained in Dr. Caldwell's evaluation demonstrate greater functioning then that reported by

plaintiff and were cited by the ALJ as grounds for finding her claims not credible.  The fact that the ALJ did not mention every fact supportive of plaintiff's position is not grounds for remand as the ALJ's decision is otherwise supported by substantial evidence.

## IV. **CONCLUSION**

In sum, because the ALJ applied the correct legal standards and her decision is supported by substantial evidence, the Commissioner's decision denying plaintiff disability benefits is affirmed and the complaint is dismissed.

Therefore, it is ORDERED that:

(1) the Commissioner's decision denying plaintiff disability benefits is **AFFIRMED**;

(2) defendant's motion for judgment on the pleadings is **GRANTED**; and

(3) the complaint is **DISMISSED**.

The Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

United States District Judge

Dated: December 18, 2015
      Utica, New York